401 So.2d 1 (1981)
Ex parte TAYLOR COAL COMPANY, INC.
(In re Willis A. Crocker, et al. v. All Coal, Iron, Ore, Gas, Oil, etc.)
79-959.
Supreme Court of Alabama.
February 27, 1981.
Rehearing Denied July 2, 1981.
*2 Charles Nolen, Fayette, Tweedy, Jackson & Beech, Jasper, Wilbor J. Hust and Olin W. Zeanah of Zeanah, Donald & Hust, Tuscaloosa, for petitioner.
Louis P. Moore of Holder, Moore & Grocholski, Fayette, Sam M. Phelps and Eugene A. Beatty of Phelps, Owens, Jenkins, Gibson & Fowler, Tuscaloosa, for respondent.
ADAMS, Justice.
This case comes to us on petition for writ of mandamus seeking a writ directed to the Honorable Clatus Junkin, Circuit Judge for Fayette County, Alabama, to enter an order which:
1. disqualifies Louis P. Moore in the firm of Holder, Moore and Grocholski from representing the defendants;
2. disqualifies Sam M. Phelps in the firm of Phelps, Owens, Jenkins, Gibson and Fowler from representing the defendants in this case;
3. disqualifies or enjoins Robert O. Sigler, who is a party to this action, from participating in this case; and,
4. seals the entire record in this case.
The motion to disqualify was filed on May 29, 1980, by the petitioner, Taylor Coal Company, Inc. It had filed a complaint in intervention in this case on January 14, 1977. Its contention in the motion was that Louis Moore had in the past rendered title opinions to it on some of the land involved in this litigation prior to his employment by the defendants and, therefore, he, as well as his law firm, his co-counsel and Robert O. Sigler are disqualified from participation in this lawsuit.
Discovery was had in connection with the motion and a hearing was held ore tenus on July 15, 1980. The trial judge denied the motion on August 30, 1980, and entered a detailed opinion in which he reached the following conclusions:
*3 1. Neither Louis Moore, nor anyone in the firm of Holder, Moore and Grocholski, received any information of a confidential nature from Taylor Coal Company, Inc., during the period of time within which Mr. Moore was rendering title opinions to Taylor Coal Company, Inc.
2. Neither Sam M. Phelps, nor anyone in the firm of Phelps, Owens, Jenkins, Gibson and Fowler, received any such information from Louis Moore or any member of the firm of Holder, Moore and Grocholski.
3. There was no evidence of any reason for the disqualification of, or the issuance of an injunction against, Robert O. Sigler, who is a party to this action.
4. Any relief to which the movant otherwise may have been entitled was barred by the doctrine of laches.

Jurisdiction
At first blush, it would appear that this controversy could be resolved very simply by denying the writ because of the narrow field of operation of a petition for writ of mandamus. The cases are replete with statements to the effect that mandamus does not lie to review a judge's acts of discretion. East v. Todd, 284 Ala. 495, 226 So.2d 153 (1969); Assured Investors Life Insurance Company v. National Union Associates, Inc., 362 So.2d 228 (Ala.1978). Ordinarily, the matter should come to us by way of review on appeal, the judge below having exercised his discretion not to disqualify defendant's counsel and his co-counsel. However, the petitioner has leveled serious charges of violations of Canons 4 and 9, Code of Professional Responsibility of the Alabama State Bar, against two lawyers licensed to practice before this Court. The impact of those violations on the present litigation is too important for us to ignore until these charges come to us on appeal. As far as we have been able to determine, the issues presented by the petitioner, surprisingly, are of first impression in this state and could taint the trial of the case below, unless resolved at this time. We said in Jones v. Alabama State Bar, 353 So.2d 508, 509 (Ala.1977), quoting from In re Evans, 42 Utah 282, 130 P. 217 (1913):
The summary jurisdiction which the court has over its attorneys as officers of the court is also invoked. That jurisdiction is inherent, continuing, and plenary, and exists independently of statute or rules of equity, and ought to be assumed and exercised as the exigencies and necessity of the case require, not only to maintain and protect the integrity and dignity of the court, to secure obedience to its rules and process, and to rebuke interference with the conduct of its business, but also to control and protect its officers, including attorneys.
Because of the urgency of the matters raised in the petition, we proceed to review them. Mandamus lies when no other adequate remedy is available. Ex parte Locke, 346 So.2d 419 (Ala.1977); Ex parte Osborn, 375 So.2d 467 (Ala.1979).
Unfortunately, due to the delicate interplay of ethical and equitable considerations in this case, a fairly comprehensive review of the facts involved in this protracted and checkered litigation will be necessary.

History of Litigation
This action was commenced on November 12, 1976, when Willis Crocker filed a bill to quiet title to certain mineral lands in Fayette County. The defendants are: (1) The Pearson Coal and Iron Company, (2) Robert O. Sigler, (3) Ensearch Exploration, Inc., and (4) a group which has been referred to as the "Pearson Heirs." The "Pearson Heirs" include the following: Nancy Milliken Barth, Robert A. Blackstone, Elliott H. Bridges, James R. Bridges, Jr., Roberta Bridges Grimes, Constance Pike Hill, Rosa B. Hughes, Alexander Rutledge Pearson, Alfred Eubank Pearson, James Pugh Pearson, Jr., Robert H. Pearson, Edwin Bertram Pike, Jr., and Howard N. Rix; J. Michael Rediker, Charles R. Terry, R. H. Woodrow, Jr., and Henry B. Gray, III, as Trustees of the B. F. Roden estate; and the First National Bank of Hot Springs, Arkansas, as Trustee for Madelyn Thompson under the will of Fern O. Rix, deceased. Louis Moore, as attorney for these defendants, filed a motion to dismiss on December 17, 1976.
*4 Taylor Coal Company filed a complaint in intervention on January 14, 1977. The complaint alleged a leasehold interest through Willis Crocker and requested a determination of the validity of the lease. The complaint also sought a declaration that Taylor Coal Company was not liable in damages for any coal which the corporation mined from the lands involved. Mr. Moore then filed an answer on behalf of his clients on the grounds that the plaintiffs and the plaintiff intervenor had failed to join necessary parties. The Court ordered that the necessary parties be joined within thirty days. After three extensions of time for the purpose of adding these parties, the case was dismissed on July 22, 1977, for want of prosecution. The judgment was appealed to this Court. We dismissed the appeal on April 5, 1980, because the appellant failed to file a brief!
Sam M. Phelps entered the picture between July 22, 1977, and October, 1977, when Louis Moore associated him and the firm of Phelps, Owens, Jenkins, Gibson and Fowler for the purpose of filing a trespass action on behalf of the "Pearson Heirs" and Robert O. Sigler. On November 18, 1977, Moore and Phelps filed such an action in the United States District Court for the Northern District of Alabama. The defendants in the case were Taylor Coal Company, Taylor and Son Coal Company, Walter Scott Taylor, Sr., and Walter Scott Taylor, Jr. The District Court dismissed the action on August 3, 1979, for lack of subject matter jurisdiction because Pearson Coal and Iron Company was a necessary party whose joinder would destroy diversity jurisdiction.
On the same day, Moore and Phelps re-filed the action in the Circuit Court for Tuscaloosa County, Alabama. In the Tuscaloosa action the "Pearson Heirs" and Mr. Sigler asserted the same claims against Taylor Coal Company and the other defendants as were asserted in the previously dismissed federal action. In addition, Drummond Coal Company and Carlos Waid were made defendants in the Tuscaloosa action. On August 15, 1979, Taylor Coal Company filed an amendment to its complaint in intervention in this action (the Fayette action), despite the court's July 22, 1977, order of dismissal for failure to join necessary parties.
On December 11, 1978, the Circuit Court of Tuscaloosa County, Alabama, dismissed the Tuscaloosa trespass action because of the pending action in Fayette County, Alabama. On December 12, 1979, Judge Junkin, in the Fayette County action, granted a motion to strike Taylor Coal Company's amendment to the complaint in intervention because the action had been dismissed on July 22, 1977. Both of the judgments, namely, the judgment in the Tuscaloosa case and the judgment in the Fayette case, were appealed to us.
On February 8, 1980, we reversed and remanded both of these cases and stayed the Tuscaloosa action, pending the outcome of this case (the Fayette action). Taylor Coal Company, Inc. v. Pearson, 380 So.2d 779 (Ala.1980). Taylor Coal Company filed its motion to disqualify on May 29, 1980.

Actions of the Parties
Louis Moore rendered seven title opinions to Taylor Coal Company over a seven month period from September, 1975 to March, 1976. Only two of the opinions covered land involved in this action, namely, the first opinion, dated September 10, 1975, and the last opinion, dated March 3, 1976. In each opinion, Moore certified that the "Pearson Heirs" owned the mineral interests in the land.
Richard Willcutt, an employee of Taylor Coal Company first contacted Moore about giving a title opinion to Taylor Coal Company in September, 1975. He came to Moore's office in Fayette, Alabama, requested an opinion and gave Mr. Moore an abstract of title prepared by Lucy Crutcher. Mr. Moore mailed the title opinion and the abstract to Taylor Coal Company's office in Bessemer, but kept a copy of the opinion and a copy of the abstract in his office file. The extent of the attorney-client relationship between Mr. Moore and Taylor Coal Company was the rendering of title opinions based on public records in Fayette County.
*5 Taylor Coal Company discussed the title opinions with other persons, and also made its records available to Drummond Coal Company and a company called "Natomis" during negotiations for the sale of stock of Taylor Coal Company.
The firm of Holder, Moore and Grocholski, in which Mr. Moore is a partner, has represented Ensearch Exploration, Inc., since 1971. Ensearch Exploration, Inc., is engaged in oil and gas exploration in Fayette County, Alabama. Mr. Moore has, during this period of time, consulted with Ensearch's land agents and rendered title opinions for Ensearch, some involving the mineral rights in this suit.
Mr. Sigler came to Fayette County as a land agent for Ensearch and first contacted Mr. Moore concerning mineral ownership of the "Pearson Heirs" in November, 1975. After Mr. Sigler had acquired an oil and gas lease for Ensearch Exploration, Inc., from the "Pearson Heirs," he employed Mr. Moore about May 27, 1976, to represent him individually. Pursuant to that employment, Mr. Moore prepared a coal lease and an assignment for Mr. Sigler to be signed by the "Pearson Heirs." The document leased to Mr. Sigler certain mineral rights and assigned to him the right to institute an action for trespass involving the mineral interests. In connection with this representation, the trial court found that Mr. Moore relied solely on title information prepared and furnished to him by Mr. Sigler.
Taylor Coal Company knew that Moore had rendered a title opinion for it when Mr. Moore sent his opinion to Taylor Coal Company in 1975. Taylor Coal Company knew that Mr. Moore was representing Mr. Sigler and the "Pearson Heirs" in connection with the same property which was the subject of two of his opinions, when they filed a petition to intervene in the Fayette case on January 14, 1977.
This knowledge is indicated by the following facts. On October 15, 1976, Moore notified Charles Tweedy, by letter, that he was representing the "Pearson Heirs" and Mr. Sigler in connection with their trespass claim. Furthermore, he discussed the fact of his representation with Mr. Tweedy over the phone one or two months before he wrote the letter. Charles Tweedy is an attorney of record for Taylor Coal Company and Drummond Coal Company in the Fayette action. He also is a director of Drummond Coal Company and was a director of Taylor Coal Company from March 31, 1976, to April 30, 1978, when Taylor Coal Company was merged into Drummond Coal Company.
Furthermore, in May of 1976, William B. Long, on behalf of Drummond Coal Company, referred to the fact that a Fayette lawyer was representing Pearson Coal and Iron Company against Taylor Coal Company. Mr. Long, on behalf of Drummond Coal Company, made repeated demands of the former stockholders of Taylor Coal Company to honor the indemnity agreement to defend Taylor Coal Company against claims. These demands began in May, 1976, and ultimately resulted in litigation in federal court.
Taylor Coal Company claims that it formally learned of Mr. Moore's conflict of interest when Tommy Wells of the firm of Cabaniss, Johnston, Gardner, Dumas and O'Neal, discovered a title opinion written by Louis Moore, dated March 6, 1976, which had been misfiled. This discovery was made about April 29, 1980, and a motion to disqualify was filed on May 29, 1980.

Substantial Relationship Test v. Confidential Information Test
In Taylor Coal Company's petition for writ of mandamus, two members of this Bar, Louis Moore and Sam Phelps, have been charged with violation of Canons 4 and 9, Code of Professional Responsibility of the Alabama State Bar. Canon 4 provides that a lawyer should preserve the confidences and secrets of his client. Providing for the preservation of confidences and secrets of a client, Disciplinary Rule 4-101(B), states:
Except as permitted by DR4-101(C) a lawyer shall not knowingly:
(1) Reveal a confidence or secret of his client.

*6 (2) Use a confidence or secret of his client to the disadvantage of the client.
(3) Use a confidence or secret of his client for the advantage of himself or of a third person, unless the client consents after full disclosure.
Canon 9 provides as follows: "A lawyer should avoid even the appearance of professional impropriety."
Although we have diligently searched, surprisingly, we have found a paucity of authority dealing with the issues involved herein. Two cases shed scant, but insufficient, light to allow us to reach our objective. In Lester v. Gay, 217 Ala. 585, 117 So. 211 (1928), plaintiff, a female, filed suit against a physician for assault and battery she claimed was committed by the physician while she was his patient. In attempting to reverse a judgment for the defendant, the plaintiff claimed that the lawyer for the doctor had been consulted by her husband with a view toward employment; had, therefore, acquired confidential knowledge of the plaintiff's case; and, consequently, should not have been allowed to represent the doctor in the civil suit. The lawyer testified that the matter had been mentioned to him by plaintiff's husband, yet he had not advised plaintiff nor her husband, but merely said that "it was a case for the grand jury." Under those facts, this Court found that the lawyer's representation of the physician was not improper.
The second case is Hannon v. State, 48 Ala.App. 613, 266 So.2d 825 (Cr.App.1972). Appealing a robbery conviction, the defendant argued that the district attorney had been his lawyer while practicing in the public defender's office and had secured confidential information concerning his case that the district attorney might have turned over to the assistant district attorney who prosecuted him. The Circuit Court held a full blown evidentiary hearing on this issue. The trial court, as well as the Court of Criminal Appeals, concluded that no confidential information had passed to the assistant district attorney and, therefore, the integrity of the trial was preserved.
It would seem from this scant authority that Alabama is inclined to embrace the so-called confidentiality test or fact-by-fact analysis to determine if there has been any impropriety in an attorney switching from one client to another where the same subject matter is involved. This we cannot clearly discern from the cases because there has been no mature consideration of the substantial relationship test. Indeed, the test has not even been mentioned.
The substantial relationship rule is probably best described in T. C. & Theatre Corporation v. Warner Brothers Pictures, Inc., 113 F.Supp. 265, 268-69 (S.D.N.Y. 1953):
[T]he former client need show no more than that the matters embraced within the pending suit wherein his former attorney appears on behalf of his adversary are substantially related to the matters or cause of action wherein the attorney previously represented him, the former client. The court will assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation. It will not inquire into the nature and extent. Only in this manner can the lawyer's duty of absolute fidelity be enforced and the spirit of the rule relating to privileged communications be maintained.
To compel the client to show, in addition to establishing that the subject of the present adverse representation is related to the former, the actual confidential matters previously entrusted to the attorney and their possible value to the present client would tear aside the protective cloak drawn about the lawyer-client relationship. For the court to probe further and sift the confidences in fact revealed would require the disclosure of the very matters intended to be protected by the rule [protecting client confidences].
This substantial relationship rule is followed in the majority of the jurisdictions and was followed by the Fifth Circuit Court of Appeals in Woods v. Covington County *7 Bank, 537 F.2d 804 (5th Cir. 1976). The confidentiality rule differs from the substantial relationship rule in that in the former, the protective cloak about the attorney-client relationship is pierced. Matters which transpired between the two are examined to determine what impact the information passed by the client to the attorney would have on the new attorney-client relationship.
Seemingly, this is what was done in the Gay and Hannon cases. In each case, the attorney was put on the stand and questioned about the information he received from the client, as well as what he had done with it. The court, in each instance, finding no compromise of the confidential relationship, held that the integrity of the proceedings was not impeached.
Unfortunately, the confidentiality rule has an inherent defect. It cannot be applied uniformly. In jury trial cases, the court could hold an in camera hearing to determine whether confidential information will be used. On the other hand, in many cases the trier of fact will be the judge. This is the situation in this casea bill to quiet title. To hold that the trier of fact would not be compromised under such circumstances borders on the ridiculous.
We hold that the substantial relationship test is preferable to the confidentiality test, thereby adopting the majority view and that of the Fifth Circuit Court of Appeals. This is not to say that whenever a substantial relationship is found the lawyer is automatically disqualified. See United States v. Miller, 624 F.2d 1198 (3d Cir. 1980); Church of Scientology of California v. McLean, 615 F.2d 691 (5th Cir. 1980); Central Milk Producers Cooperative v. Sentry Food Stores, Inc., 573 F.2d 988 (8th Cir. 1978); Novo Terapeutisk Laboratorium A/S v. Baxter Travenol Laboratories, Inc., 607 F.2d 186 (7th Cir. 1979). Although later overruled on the procedural issue of appealability, the case of State of Arkansas v. Dean Foods Products Company, Inc., 605 F.2d 380, 383 (8th Cir. 1979), still provides cogent reasoning appropriate to the instant case, viz.: Disqualification of counsel, like other reaches for perfection, is tempered by a need to balance a variety of competing considerations and complex concepts. Disqualification in spasm reaction to every situation capable of appearing improper to the jaundiced cynic is as goal-defeating as failure to disqualify in blind disregard of flagrant conflicts of interest. Between these ethical extremes lie less obvious influences on the interest of society in the orderly administration of justice, on the interest of clients in candid consultation and choice of counsel, and on the interest of the legal profession in its representational soul.
We now turn to applying the law which we have enunciated to the facts in this case. Judge Junkin held that neither Louis Moore, nor anyone else in the firm of Holder, Moore and Grocholski received any information of a confidential nature from Taylor Coal Company during the period of time in which Mr. Moore was rendering title opinions to Taylor Coal Company. His holding was based on his findings that the extent of the attorney-client relationship between Mr. Moore and Taylor Coal Company was the rendering of title opinions based on public records in Fayette County. An alternate basis for his holding was his finding that Taylor Coal Company discussed the title opinions rendered by Mr. Moore with other persons, as well as the Drummond Coal Company, during negotiations for the sale of stock of Taylor Coal Company. We disagree with the Court's holding that no confidential information passed in the attorney-client relationship of Mr. Moore and Taylor Coal Company. Furthermore, we do not believe that this holding is indispensable to our determination that Mr. Moore did not violate Canons 4 and 9, Code of Professional Responsibility of the Alabama State Bar.
Once there is a determination of an attorney-client relationship, the attorney's lips are sealed concerning information furnished to him, as well as the fruits of his labor. An attorney-client relationship is evidenced by the record here. Taylor Coal Company furnished Mr. Moore with an abstract *8 of title prepared by Lucy Crutcher. Then, Mr. Moore examined the abstract, rendered an opinion, kept a copy of it and the abstract in his office file, rendered a bill and presumably got paid for his services. The attorney's lips are sealed, even though the client may have discussed the subject matter of the attorney-client relationship with other persons, as was done here when Taylor Coal Company discussed the subject matter of the attorney-client relationship with Drummond Coal Company and others.
A substantial difference in the law is made between the attorney's ethical responsibility with reference to disclosure of confidential information and his privilege not to testify in court concerning his client's secrets. In the latter instance, the attorney can be required to testify if it is demonstrated that the attorney and client discussed the subject matter of the attorney-client relationship in the presence of a third person. Doe v. A Corporation, 330 F.Supp. 1352 (S.D.N.Y.1971), aff'd, 453 F.2d 1375 (1972). However, this does not mean that the lawyer is allowed to reveal his client's secrets, even after such a disclosure in court. It has been said that the confidential relationship between the attorney and client is the soul of lawyering. See Fred Weber, Inc. v. Shell Oil Company, 566 F.2d 602 (8th Cir. 1977) (later overruled on a procedural matter unimportant to the issues at hand). This relationship is the cornerstone of the legal profession, without which the adversary system would not work. The client simply must have the secure feeling that whatever he tells his lawyer or gives his lawyer, even though it may be public information, will be held by his lawyer inviolate.
Let us hasten to add that there are many exceptions to the rule. Some of the exceptions occur where there exist: (1) two or more clients employing the same attorney as in business transactions (drafting of deeds, execution of real estate agreements, etc.), (2) waiver, and/or (3) no public sense of impropriety involved in an attorney's representing a client whose interests are hostile to those of his former client where the subject matter of the litigation is substantially the same. The attorney's lips are not completely sealed in these exceptional situations, and the attorney may sue the former client concerning substantially the same subject matter. In In re Bauer's Estate, 79 Cal. 304, 21 P. 759, 762 (1889), it was said:
When two persons address a lawyer as their common agent, their communications to the lawyer, as far as concerns strangers, will be privileged, but as to themselves they stand on the same footing as to the lawyer, and either can compel him to testify against the other as to their negotiations.
In 1 E. Thornton, A Treatise on Attorneys at Law, 183-84 (1914), it is said:
When two or more clients employ the same attorney in the same business, communications made by them in relation to such business is not privileged inter sese; nor are such communications privileged as between any one of the parties and the attorney. It is the secrets of the client which affect his right that the law does not permit the attorney to divulge. By selecting the same attorney, in making their communications in the presence of each other, each party waives his right to place those communications under the shield of professional confidence. [Footnotes omitted.]
In Croce v. Superior Court, 21 Cal.App.2d 18, 68 P.2d 369 (1937), an attorney who had represented several clients associated in a business enterprise, in the defense of an action involving a common interest, was allowed to represent one of his former clients in a subsequent litigation instituted against his associates wherein substantially the same subject matter was being re-litigated. The Court ruled that this was an exception to the confidentiality rule because all of the clients were involved in a common business enterprise and had selected the same lawyer.
In the case at bar, there can be no question that the subject matter of this litigation is substantially related to the *9 work done by Mr. Moore when he wrote two title opinions for Taylor Coal Company. We have already said that once an attorney-client relationship is established all information coming to the attorney from his client, whether it be from public records or not, is confidential. However, we find this case very close to the exception that allows a lawyer to sue a former client where both have employed him with reference to the same business transaction. Judge Junkin has already found that the only information which was given to Mr. Moore was an abstract of title prepared by Lucy Crutcher from public documents. Here, the confidential information is not only known to Taylor Coal Company, Mr. Sigler and the "Pearson Heirs," but in a legal sense is known to the whole world. Indeed, Mr. Moore had represented Ensearch Exploration, Inc., since 1971 and prior to his rendering title opinions to Taylor Coal Company had rendered title opinions to Ensearch land agents on some of the mineral rights involved in this litigation. Was it, therefore, improper for Mr. Moore to render a title opinion on this same property to Taylor Coal Company? We think not.
The Court is not unaware that Fayette County is a small, principally rural county in western Alabama. There are probably about a dozen lawyers in the whole county. In weighing the important considerations of Canons 4 and 9, we must, of necessity, balance the weighty considerations of those Canons against the need of the public to obtain counsel of its choosing. In the realm of ethical consideration, there is no more apt a statement than Shakespeare's observation that "there is nothing either good or bad, but thinking makes it so." We cannot honestly conclude that the public, or the bar, particularly in Fayette County, would see an "impropriety" in Mr. Moore's representing Mr. Sigler and the "Pearson Heirs" against his former client, Taylor Coal Company, when the only act which he performed for them which is substantially related is the rendering of two title opinions concerning rights involved in the present litigation. On the other hand, we can see a public outcry if we were to strip from the members of this community the opportunity to employ an attorney who apparently has developed some expertise in title work in the Fayette area.
Having concluded that there has been no violation of Canons 4 and 9 with reference to Mr. Moore, a fortiori, there can be no violation of these Canons with reference to Sam Phelps and his law firm and Mr. Sigler, because they are implicated only if Mr. Moore is.

Failure of Taylor Coal Company to Timely Assert Claim of Disqualification
In Judge Junkin's detailed memorandum opinion, it is strongly suggested that the motion for disqualification in this case was filed for purposes of delay. After an exhaustive search of the records, we cannot conclude that this suggestion is not without merit. Some of the federal courts will not entertain an interlocutory appeal based on refusal to disqualify counsel. On the other hand, they will allow an interlocutory appeal where counsel has been disqualified. The reason given is that many motions to disqualify are made for purposes of delay. See Armstrong v. McAlpin, 625 F.2d 433 (2nd Cir. 1980); Allegaert v. Perot, 565 F.2d 246 (2d Cir. 1977); W. T. Grant Company v. Haines, 531 F.2d 671 (2d Cir. 1976); Lefrak v. Arabian American Oil Company, 527 F.2d 1136 (2d Cir. 1975); J. P. Foley & Co., Inc. v. Vanderbilt, 523 F.2d 1357 (2d Cir. 1975).
Taylor Coal Company first hired Mr. Moore to render a title opinion concerning the lands which are the subject of this litigation in September of 1975. The first action in this case was commenced on November 12, 1976, when Willis Crocker filed a bill to quiet title to certain mineral lands in Fayette County. Mr. Moore filed a motion to dismiss on behalf of all of the defendants in the case on December 17, 1976. Taylor Coal Company filed a complaint in intervention on January 14, 1977, and at this time knew that Mr. Moore was representing an interest inconsistent with the subject matter of his employment of September, *10 1975. They had to know this because a corporation can only act through its officers and agents. Their lawyers were their agents. Birmingham Boys' Club, Inc. v. TransAmerica Insurance Company, 295 Ala. 177, 325 So.2d 167 (1976). Taylor Coal Company filed its motion to disqualify on May 29, 1980, over three years and three months from the time that it knew that Mr. Moore was representing an interest hostile to the subject matter of its employment of him in September, 1975. Furthermore, Taylor Coal Company knew on November 18, 1977, that Moore was representing an interest hostile to its interest when he filed a suit in trespass for Mr. Sigler and the "Pearson Heirs" in the United States District Court for the Northern District of Alabama. It again knew about Moore's hostile representation when he re-filed the action making the same charges in the Circuit Court of Tuscaloosa County, Alabama. As early as October 15, 1976, Taylor Coal Company knew of Moore's representation of conflicting interests when he notified Charles Tweedy, an attorney of record for Taylor Coal Company and Drummond Coal Company, and a director of Drummond Coal Company that he was representing the "Pearson Heirs" and Mr. Sigler in connection with their trespass claim.
Taylor Coal Company again knew of Mr. Moore's alleged conflict of interest when in May of 1976, William B. Long, an officer of Drummond Coal Company, referred in a letter to the fact that a Fayette lawyer was representing Pearson Coal and Iron Company against Taylor Coal Company. Mr. Long was seeking indemnity for Drummond Coal Company from Taylor Coal Company against the claims of Mr. Sigler and the "Pearson Heirs." This claim eventually resulted in litigation in federal court. It is simply not true that Taylor Coal Company only learned of Mr. Moore's alleged conflict of interest when Tommy Wells of the firm of Cabaniss, Johnston, Gardner, Dumas and O'Neal discovered a title opinion written by Louis Moore, dated March 6, 1976, which had been misfiled.
To round out the entire picture, we do take note that after the Court below ordered the joinder of necessary parties requested by Mr. Moore, Taylor Coal Company refused to make the joinder after three extensions of time for the purpose of doing so. We also note that the Fayette case was dismissed on July 22, 1977, for want of prosecution and on August 15, 1979, Taylor Coal Company filed an amendment to its intervention in the Fayette action, despite the July 22, 1977, order of dismissal. The dismissal order was appealed by Taylor Coal Company, but we were compelled to dismiss the appeal on April 5, 1980, because Taylor Coal Company failed to file a brief! Although laches is not a defense unless prejudice has resulted to the other party, the trial court found that there was prejudice to the other party and we cannot say that its conclusion was palpably wrong. Smith v. McNaughton, 378 So.2d 703 (Ala.1979); Gertz v. Allen, 376 So.2d 695 (Ala.1979).
Having concluded that there was no violation of Canons 4 and 9, Code of Professional Responsibility of the Alabama State Bar, on the part of Mr. Moore, Mr. Sam Phelps, or their law firms, or any reason to preclude Mr. Sigler as a party in this case, and Judge Junkin having found that the parties represented by Mr. Moore and his co-counsel would be severely prejudiced by disqualification of counsel at this late hour, we must deny the petition for writ of mandamus.
WRIT DENIED.
FAULKNER and ALMON, JJ., concur.
TORBERT, C. J., and EMBRY, J., concur in result.

On Application for Rehearing
ADAMS, Justice.
Petitioner Taylor Coal Company calls to our attention that the opinion in this case recited that Taylor Coal Company failed to file a brief on appeal and its appeal was dismissed. This was not an accurate statement of the facts. That portion of the opinion is hereby corrected. This correction, however, does not undermine the fundamental facts and conclusions upon which the opinion was based.
*11 We have carefully reviewed the able arguments for rehearing made by petitioners, but considering all of the facts and circumstances surrounding this case, we are of the opinion that mandamus does not lie.
OPINION EXTENDED; APPLICATION FOR REHEARING OVERRULED.
TORBERT, C. J., and FAULKNER, ALMON and EMBRY, JJ., concur.