The plaintiff, AmSouth Bank, N.A., has petitioned this Court for a writ of mandamus directing the Honorable William J. Wynn, judge of the Jefferson County Circuit Court, to disqualify the law firm of Arnold Porter from representing the defendants, Drummond Company, Inc.; Drummond Coal Sales, Inc.; Elbert A. Drummond; Garry N. Drummond; Joseph E. Nicholls, Jr.; Charles W. Adair; and R. Weaver Self, in this suit alleging breach of fiduciary duties and fraud on the part of the defendants in effectuating the merger of Alabama By-Products Corporation ("ABC") and Drummond Holding Corporation. (The defendants are hereinafter collectively referred to as "Drummond.")[1] The writ is denied.
The pertinent facts are as follows: On or about December 3, 1990, AmSouth retained the New York law firm of Arnold Porter to represent it in connection with certain banking and corporate matters, including certain transactions known as "interest rate swaps." On March 13, 1991, Drummond retained Arnold Porter to assist its Alabama counsel, the law firm of Maynard, Cooper, Frierson Gale, P.C. ("Maynard, Cooper"), in defending it against a suit that had been filed by John H. Martin, a minority stockholder of ABC, challenging the manner in which Drummond had effectuated the merger with ABC. On May 6, 1991, AmSouth, as trustee of a number of trusts that had also owned stock in ABC prior to the merger, sued Drummond, alleging breach of fiduciary duties and fraud on the *Page 717 
part of Drummond in purchasing the ABC stock that had been owned by the trusts. AmSouth's suit was consolidated with Martin's suit for trial. Because AmSouth was a client of Maynard, Cooper, that firm withdrew from representing Drummond after AmSouth refused to waive the apparent conflict of interest. Shortly thereafter realizing that it, too, had a conflict of interest (i.e., that it was defending one of its clients, Drummond, against a suit filed by another of its clients, AmSouth), Arnold Porter requested that AmSouth and Drummond waive the conflict. Drummond agreed to waive the conflict, but AmSouth refused, stating that its fiduciary responsibilities to the trusts prohibited it from consenting to Arnold Porter's continued representation of Drummond. AmSouth filed a motion to disqualify Arnold Porter. Arnold Porter promptly withdrew from its representation of AmSouth, but continued to represent Drummond. On June 5, 1991, Judge Wynn held a hearing on AmSouth's motion to disqualify Arnold 
Porter and, after considering the evidence, denied the motion, stating, in part, as follows:
 ". . . I'm not the bar association to enforce ethical considerations or loyalty considerations or rules of disciplinary conduct or enforcement and, aside from those considerations and those rules and that branch of our judiciary that enforces those things, I don't really feel that it is my place. So I am going to deny [AmSouth's] motion to disqualify and allow Arnold Porter to continue in this case."
The parties have stipulated that the corporate work that Arnold Porter did for AmSouth is not related to its representation of Drummond. The parties have also stipulated that Arnold Porter was not privy to any confidential information while it was retained by AmSouth that could be used against AmSouth in the present suit. Furthermore, it appears that Arnold Porter had worked approximately 19 1/2 hours for AmSouth at the time it withdrew from its representation and that it had completed all of its pending work for AmSouth before it withdrew. It also appears that at the time Arnold 
Porter discovered it had a conflict of interest, it had done approximately 300 hours of work toward the preparation of Drummond's defense.
The sole issue before this Court is whether AmSouth was entitled to have Arnold Porter disqualified from continuing to represent Drummond in the present suit.
It is well established that mandamus is a drastic and extraordinary writ to be issued only where there is 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court. Ex parte Alfab,Inc., 586 So.2d 889 (Ala. 1991).
Relying primarily on an unpublished opinion of the Alabama State Bar Disciplinary Commission, RO-91-08, AmSouth contends that Judge Wynn should have disqualified Arnold Porter under Rule 1.7 of the new Alabama Rules of Professional Conduct, which became effective January 1, 1991. Rule 1.7 provides, in pertinent part, as follows:
 "(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
 "(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
"(2) each client consents after consultation."
Drummond contends that Arnold Porter acted properly under the circumstances by withdrawing from its representation of AmSouth and continuing with its representation of Drummond. Drummond argues that Arnold Porter owed a duty of loyalty to Drummond, as well as to AmSouth; that Arnold Porter made a difficult, but proper, decision to withdraw from its representation of AmSouth, in that Drummond would have suffered more prejudice than AmSouth suffered had Arnold Porter withdrawn from its representation of Drummond and continued to represent AmSouth; and that, because the corporate *Page 718 
work that Arnold Porter had done for AmSouth is not related to its representation of Drummond, and, further, because Arnold Porter was not privy to any confidential information while it was retained by AmSouth that could be used against AmSouth in the present suit, it was proper to permit Arnold Porter to continue its representation of Drummond under Rule 1.9, supra, which provides:
 "A lawyer who has formerly represented a client in a matter shall not thereafter:
 "(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client, unless the former client consents after consultation; or
 "(b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client or when the information has become generally known."
As a threshold matter, we note that mandamus will lie to review Judge Wynn's ruling on AmSouth's motion. In Ex parteTaylor Coal Co., 401 So.2d 1 (Ala. 1981), this Court recognized that a first impression issue arising under the Rules of Professional Conduct that could taint the trial of the case below, such as the issue presented in this case, is too important to await resolution on appeal. See, also, Ex parteAmerica's First Credit Union, 519 So.2d 1325, 1326 (Ala. 1988).
We also note at this point that Judge Wynn had the authority to rule on the merits of AmSouth's disqualification motion. InEx parte Taylor Coal Co., this Court, quoting Jones v. AlabamaState Bar, 353 So.2d 508, 509 (Ala. 1977), quoting In re Evans,42 Utah 282, 130 P. 217 (1913), stated:
 "The summary jurisdiction which the court has over its attorneys as officers of the court is also invoked. That jurisdiction is inherent, continuing, and plenary, and exists independently of statute or rules of equity, and ought to be assumed and exercised as the exigencies and necessity of the case require, not only to maintain and protect the integrity and dignity of the court, to secure obedience to its rules and process, and to rebuke interference with the conduct of its business, but also to control and protect its officers, including attorneys."
401 So.2d at 3. See, also, Roberts v. Hutchins, 572 So.2d 1231
(Ala. 1990), wherein this Court held that the trial court should have disqualified the law firm representing the plaintiff because of the previous involvement of one of the law firm's attorneys as counsel for the defendants.
We proceed now to review the merits of AmSouth's motion. As previously noted, AmSouth does not take the position that Arnold Porter should have been disqualified because Arnold 
Porter had access to confidential information that could be used against AmSouth in the present suit. AmSouth concedes that the corporate work that Arnold Porter did for it is not related in any way to Arnold Porter's representation of Drummond. Therefore, unless Arnold Porter was required under the new Rules of Professional Conduct to withdraw from its representation of Drummond, as AmSouth contends it was, Arnold Porter's continued representation of Drummond was proper under Rule 1.9.
Although a client has a strong interest in retaining the counsel of its choice, Rule 1.7, with certain exceptions not applicable here, prohibits a lawyer from representing two or more clients with conflicting interests. Under Rule 1.7, a lawyer ordinarily may not act as an advocate against a client in another matter even if the other matter is wholly unrelated. See the Comment to Rule 1.7, which states:
 "Loyalty is an essential element in a lawyer's relationship to a client. An impermissible conflict of interest may exist before representation is undertaken, in which event the representation should be declined. The lawyer should adopt reasonable procedures appropriate for the size and type of firm and practice, to determine in both litigation and non-litigation matters the parties and issues involved *Page 719 
and to determine whether there are actual or potential conflicts of interest.
 "If such a conflict arises after representation has been undertaken, the lawyer should withdraw from the representation. See Rule 1.16. Where more than one client is involved and the lawyer withdraws because a conflict arises after representation, whether the lawyer may continue to represent any of the clients is determined by Rule 1.9. See also Rule 2.2(c). As to whether a client-lawyer relationship exists or, having once been established, is continuing, see Comment to Rule 1.3 and Scope.
 "As a general proposition, loyalty to a client prohibits undertaking representation directly adverse to that client without that client's consent. Paragraph (a) expresses that general rule. Thus, a lawyer ordinarily may not act as advocate against a person the lawyer represents in some other matter, even if it is wholly unrelated."
Rule 1.16(a)(1) requires a lawyer to withdraw from representing a client if the continued representation of that client would result in a violation of the Rules of Professional Conduct. Although Arnold Porter was prohibited under Rule 1.7 from representing both Drummond and AmSouth, neither Rule 1.7 nor Rule 1.16(a)(1) required Arnold Porter to withdraw from representing AmSouth under the circumstances presented here. Nothing in the Rules of Professional Conduct would have prohibited Arnold Porter from withdrawing from its representation of Drummond and continuing to represent AmSouth in connection with AmSouth's unrelated banking and corporate matters, subject, of course, to the confidentiality requirements of Rules 1.6 and 1.9(b) (i.e., Arnold Porter could not disclose to AmSouth any of the confidential information to which it had been privy during its representation of Drummond). The question presented, however, is not whether Arnold Porter was required to withdraw from representing AmSouth, but whether Arnold Porter was required to withdraw from representing Drummond. In approaching this question, we must keep in mind that the Rules of Professional Conduct are rules of reason. The rules do not exhaust the moral and ethical considerations that should inform a lawyer as to the proper course to take under any given set of circumstances. "The rules simply provide a framework for the ethical practice of law." See Scope, Alabama Rules of Professional Conduct; see, also, Roberts v. Hutchins, supra, at 1233, noting that this Court has adopted a "common sense" approach to questions concerning the professional conduct of lawyers.
As previously noted, it would have been proper under Rule 1.7 and Rule 1.16(a)(1) for Arnold Porter to withdraw from its representation of Drummond. Drummond takes the position, however, that, under the particular facts of this case, it would defy common sense to require Arnold Porter to withdraw from its representation of Drummond. Drummond's argument, which we find persuasive, is that Arnold Porter did not by its own actions create the conflict of interest and that, by requiring Arnold Porter to withdraw from representing Drummond, Drummond would be prejudiced more than AmSouth was prejudiced by its loss of Arnold and Porter's services. The record shows that shortly after it realized that a conflict of interest had been created when AmSouth sued Drummond, Arnold Porter sought a waiver of the conflict from AmSouth and that when that waiver could not be provided, it withdrew from representing AmSouth — the client that it thought would be the least prejudiced by losing its services. It appears that Arnold Porter made its decision to withdraw from representing AmSouth after carefully considering the duties of loyalty that it owed to both Drummond and AmSouth. As far as we can tell from the record, Arnold 
Porter did not act improperly in withdrawing from its representation of AmSouth. Certainly, Arnold Porter did nothing to potentially undermine public confidence in the legal profession and the judicial process.
In reaching this conclusion, we are aware that the State Bar Disciplinary Commission has ruled that lawyers ordinarily should *Page 720 
not be permitted to avoid disqualification under Rule 1.7 simply by dropping one client for another and then relying on the provisions of Rule 1.9. The unpublished opinion of the Disciplinary Commission relied on by AmSouth, RO-91-08, reads, in pertinent part, as follows:
"QUESTION:
 "I have found myself in a situation where my opponent in litigation contends that B F must withdraw from representation of a longtime client, A, for whom we have acted as general counsel, due to an alleged conflict of interest under Rule 1.7 of the new Rules of Professional Conduct, which became effective January 1, 1991. I would appreciate receiving a confidential opinion from you as to whether we can take advantage of the comments to Rule 1.7 and withdraw from representing client C and continue to represent client A under Rule 1.9.
 "The situation arose when I filed suit on behalf of our longtime client, A, against B, an Alabama general partnership, and its general partners C and D, for breach of a construction contract and . . . fraud in the inducement and during performance of the contract. We also alleged a pattern and practice of fraud based on other jobs handled by D who was overseeing the construction work for B. C did not get involved with the construction project and did not commit any of the alleged fraud and is not claimed to be part of a pattern and practice; C is only included in the law suit by virtue of being a general partner in B, and thus liable for the acts of B.
 "Shortly after filing suit, I learned that another lawyer in our firm, Carol S., was representing C on a one-time matter which was totally unrelated to the litigation. This is the only time we have represented C. The unrelated matter involved preparing the necessary legal documents for a condominium development. . . . The condominium project was not connected in any way with the project out of which the construction lawsuit arose. Different entities were the owners of the two projects and different people were involved in each project. The only connection [between] C [and] the construction project was that it was a general partner of the owner of the construction project, B, a general partnership.
 "Legal work on the condominium project for C commenced in April 1989. For several years prior to this date, B F had acted as general counsel for A. In September 1989, A entered into a construction contract with B for a project which was not in any way related to the condominium project. In November 1989, client A asked us questions concerning the construction contract. We periodically thereafter gave A advice concerning its rights under the construction contract. Matters deteriorated between A and B in November 1990, [and] A asked us to file suit against B. C was included as a defendant in the lawsuit since it was one of the general partners of B. Suit was filed November 13, 1990.
 "In late November 1990, we discovered the potential conflict concerning C. We immediately notified A and C of the situation. We received verbal consent from both A and C to continue our representations in the respective matters.
 "In January 1991, we were advised by counsel for C . . . that C was withdrawing its consent to our representing A in the construction litigation because we had not fully informed C as to the extent of the potential conflict. This was surprising since C had a copy of the complaint and had in-house lawyers on staff. Nevertheless, C insisted that we withdraw from our representation of A in the construction litigation but continue to represent C in the condominium project. C contends we must withdraw from representing A because of Rule 1.7 of the Rules of Professional Conduct and cites a portion of the comments thereto (under subtitle 'Conflicts in Litigation') which state:
 " 'Ordinarily, a lawyer may not act as advocate against a client the lawyer represents in some other matter, even if the other matter is wholly unrelated.' *Page 721 
 "Since the matter involving C is wholly unrelated to the construction litigation, it seems to me that other comments to Rule 1.7 control how this claimed conflict could be resolved. The second sentence in the second paragraph of the comments under 'Loyalty to a Client' states:
 " 'Where more than one client is involved and the lawyer withdraws because a conflict arises after representation [has been undertaken], whether the lawyer may continue to represent any of the clients is determined by Rule 1.9.'
 "Rule 1.9 would not seem to prevent us from continuing to represent A in the construction litigation, if we withdrew from representing C in the condominium project, since the construction litigation has no relationship or connection to the condominium project.
". . . .
 "Thus, the question presented is whether we may withdraw from representing C in the condominium project and continue to represent our longtime client, A, in the construction litigation, where C is a defendant by being a general partner of B, or whether we must do what C wants and withdraw from representing A in the construction litigation and to continue to represent C in the condominium project, or whether we should do something else. We would appreciate your confidential opinion as to what we should do in this situation and whether we can withdraw from representation of C and continue to represent A in the construction litigation.
"ANSWER:
 "Your representation of client A in the construction litigation is directly adverse to client C and for that reason you must withdraw from representing A in that matter. You may continue to represent A and C in other matters totally unrelated to the construction litigation. Additionally you may not, by discontinuing your representation of C, take advantage of the less stringent conflict rule regarding former clients and thereby continue to represent A.
". . . .
 "The more difficult question is whether you could cease to represent client C, thus relegating C to former client status and thereby take advantage of the former client rule (Rule 1.9). Indeed the comment to Rule 1.7 seems to indicate that such a procedure would be ethically permissible. The second paragraph of the comment provides that, 'Where more than one client is involved and the lawyer withdraws because a conflict arises after representation, whether the lawyer may continue to represent any of the clients is determined by Rule 1.9.' We do not believe that this comment was intended, in situations such as this, to allow the lawyer to disregard one client in order to represent another client. To hold otherwise would do great harm to the principle of loyalty which is [the] bedrock in the relationship between lawyer and client.
 "We find support for this view in Unified Sewerage Agency [of Washington County, Oregon] v. Jelco, Inc., 646 F.2d 1339 (9th Cir. 1981), where the Court held that:
 " 'The present-client standard applies if the attorney simultaneously represents clients with different interests. This standard continues even though the representation ceases prior to filing of the motion to disqualify. If this were not the case, the challenged attorney could always convert a present client to a "former client" by choosing when to cease to represent the disfavored client.' (Supra at 1345, N. 4 citing Fund of Funds, Ltd. v. Arthur Anderson
[Andersen] Co., 567 F.2d 225 (2d Cir. 1977))." (Emphasis added.)
We believe, however, that the facts of the present case are materially distinguishable from the facts that were presented to the Disciplinary Commission in RO-91-08. The Disciplinary Commission's decision was based, in large part, on the premise that a law firm should not be allowed to abandon its absolute duty of loyalty to one of its clients so that it can benefit from a conflict of interest that it has created. Other courts have recognized that the manipulation *Page 722 
of client relationships could be the potential result if law firms were allowed to discard one attorney-client relationship in contemplation of pursuing a more beneficial, conflicting representation. See, e.g., Florida Insurance GuarantyAssociation, Inc. v. Carey Canada, Inc., 749 F. Supp. 255
(S.D.Fla. 1990); Gould, Inc. v. Mitsui Mining Smelting Co.,738 F. Supp. 1121 (N.D. Ohio 1990); see, also, Tipton v.Canadian Imperial Bank of Commerce, 872 F.2d 1491 (11th Cir. 1989); and Chateau De Ville Productions, Inc. v.Tams-Witmark Music Library, Inc., 474 F. Supp. 223
(S.D.N.Y. 1979). However, these courts have either held, or indicated, that, under circumstances similar to those in the present case, a law firm may avoid disqualification by moving swiftly to withdraw from its representation of a client, so as to minimize the prejudice to each client concerned, provided that the law firm did not play a role originally in creating the conflict of interest. In our view, this approach, which we adopt today, is consistent with the "common sense" approach that has been adopted by this Court for resolving questions under the Rules of Professional Conduct. See, e.g., Chateau DeVille Productions, Inc., supra, where the court made the following observation:
 "Our Court of Appeals has adopted a cautious approach to questions of disqualification, examining the problems sought to be met by the [ABA Code of Professional Responsibility], the reality of those problems in practice and ' "whether a mechanical and didactic application of the Code to all situations automatically might not be productive of more harm than good, by requiring the client and the judicial system to sacrifice more than the value of the presumed benefits." ' International Electronics Corp. v. Flanzer, 527 F.2d 1288 (2d Cir. 1975)."
474 F. Supp. at 225-26.
Therefore, after careful review of the Rules of Professional Conduct the applicable case law, and the particular facts of this case, and after considering the duties of loyalty that Arnold Porter owed to both Drummond and AmSouth, as well as the fact that Arnold Porter did not by its own actions create the conflict of interest, we hold that Arnold Porter did not act improperly in withdrawing from its representation of AmSouth and continuing its representation of Drummond. We do point out, however, that the record indicates that Arnold 
Porter has not yet made a formal appearance in Jefferson Circuit Court on behalf of Drummond. Our holding in this case should in no way be interpreted as an indication by this Court that Arnold Porter should be permitted to appear in Jefferson Circuit Court in the absence of the proper introduction and recommendation by a member of the Board of Commissioners of the Alabama State Bar. See Rule 7 ("Admission of Non-resident Attorneys Pro Hac Vice"), Rules Governing Admission to the Alabama State Bar.
WRIT DENIED.
HORNSBY, C.J., and MADDOX, ALMON, SHORES, ADAMS, STEAGALL, KENNEDY and INGRAM, JJ., concur.
[1] AmSouth's complaint identifies the defendants as follows: Drummond Company, Inc., is an Alabama corporation and its subsidiary, Drummond Coal Sales, Inc., is a Delaware corporation. Both corporations engage in the business of mining, purchasing, and selling coal. Elbert A. Drummond is on the board of directors of both Drummond Company, Inc., and Drummond Coal Sales, Inc., and serves as president of both of those corporations. Elbert A. Drummond is also vice-chairman of the board of directors of ABC. Garry N. Drummond is chairman of the board of directors of Drummond Company, Inc., and serves as its chief executive officer. Garry N. Drummond is also on the board of directors of Drummond Coal Sales, Inc., and is chairman of the board of directors of ABC. Joseph E. Nicholls, Jr., is on the board of directors of Drummond Company, Inc., and Drummond Coal Sales, Inc., and serves as a senior vice-president of both corporations. Nicholls is also a member of the board of directors of ABC. R. Weaver Self is on the board of directors of ABC and serves as one of its senior vice-presidents and as its controller and treasurer. Charles W. Adair is on the board of directors of ABC and serves as its chief executive officer.