On August 22, 1989, Peter Lorens, an employee of the Omaha, Nebraska, law firm of Zweiback, Hotz Lamberty, P.C. (hereinafter "Zweiback"), contacted Mary Ann Westbrook, a partner in the Florence, Alabama, law firm of Gonce, Young 
Westbrook, and informed her that the Zweiback firm represented Central States Health and Life Company of Omaha, Nebraska ("Central States"), in a bad faith *Page 81 
suit against it. Lorens also told Westbrook that Central States was also in the beginning stages of defending the lawsuit in Lauderdale County, Alabama, and he asked her to file an appearance as local counsel on behalf of Central States, which she did on September 12, 1989. Mrs. Westbrook acted as local counsel from that date until the suit was dismissed on June 25, 1990, at which time her services were concluded.
On June 11, 1990, John Harris filed a complaint on behalf of Linda Bland, as attorney-in-fact for her mother, Valerie A. Bland, against Central States, alleging breach of contract and bad faith. Central States retained the law firm of Starnes 
Atchison to represent it in that suit. Harris approached Robert Gonce of the Westbrook firm about associating Gonce in the Bland suit. After obtaining an informal opinion from Alex Jackson, ethics counsel for the Alabama State Bar Association, to the effect that there was no conflict of interest, Gonce filed an appearance as an attorney for Bland on July 26, 1990.[1] On July 27, 1990, counsel for Central States wrote Gonce, stating that there was a conflict of interest in his firm's representation of Bland. Gonce responded by stating that his firm did not currently represent Central States and that he did not believe a conflict existed. On October 5, 1990, Central States moved to disqualify any member of the Gonce, Young 
Westbrook firm from participating in the Bland case. The trial court denied that motion on August 13, 1991.
In an apparent attempt to comply with Rule 5, A.R.App.P., Central States submitted a proposed order to the trial court that would have allowed it to take a permissive appeal of the trial court's interlocutory order denying its motion to disqualify. The trial court refused to sign the proposed order, and Central States filed in this Court a petition for a writ of mandamus.
Procedurally, the method for seeking review of an order either disqualifying or not disqualifying an attorney from representing a client has varied over the years. Parties have sought review by way of appeals, petitions for permission to appeal, and petitions for the writ of mandamus. This Court has considered each filing on a case-by-case basis.
To avoid future problems with incorrect filings and to provide specific instructions to the Bar as to the correct method for seeking review of a lower court's ruling on a motion to disqualify an attorney, this Court holds that review of such a ruling is by a petition for writ of mandamus only. To require a party to wait until an appeal can be taken does not promote judicial economy, and a petition for permission to appeal does not "advance the ultimate termination of the [underlying] litigation." Rule 5, A.R.App.P. Review of a ruling on a disqualification petition by a petition for writ of mandamus will promote expeditious examination of a collateral issue and will allow the underlying litigation to continue without delay.
Central States seeks a writ of mandamus directing the trial judge to enter an order disqualifying all members of the Gonce, Young Westbrook firm from participating in the Bland case, contending, specifically, that the firm violated Rule 1.9, Alabama Rules of Professional Conduct. That rule provides:
 "A lawyer who has formerly represented a client in a matter shall not thereafter:
 "(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client, unless the former client consents after consultation; or
 "(b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect *Page 82 
to a client or when the information has become generally known."
In Ex parte Taylor Coal Co., 401 So.2d 1 (Ala. 1981), this Court adopted the "substantial relationship test" for determining whether an attorney's prior representation of a client is a ground for disqualifying the attorney from representing a party against the former client's interest. Applying that test in Ex parte State Farm Mut. Auto. Ins. Co.,469 So.2d 574, 575 (Ala. 1985), this Court said:
 "If the former client wishes to have the attorney disqualified, he need show only that the matters or the causes of action involved in the pending action are substantially related to the matters or causes of action of the prior representation. . ..
 ". . . '[T]he party seeking disqualification of his former counsel must bear the burden of proving that the present and prior representations are substantially related.' "
(Citation omitted.)
Westbrook acted as local counsel for Central States in the Lauderdale County bad faith suit in which the Zweiback firm was principal counsel. In the instant case, Gonce is co-counsel for Bland in a suit by her and her mother against Central States alleging breach of contract and bad faith. The evidence before us, however, reveals that the Gonce firm's involvement in the prior case in which Central States was a defendant was limited at most. Westbrook's contact with Central States during her representation of it in the former case was exclusively through Central States' primary counsel, Zweiback. She played no role in determining the defense employed or the tactics used in that case.
Westbrook's brief to this Court contains copies of correspondence evidencing her limited role in the former representation. That correspondence shows that, although she requested direct contact with representatives of Central States, her requests were ignored by the Zweiback firm, which apparently maintained exclusive control of the case. There is also evidence that the Zweiback firm often did not return Westbrook's telephone calls and that it did not answer correspondence from her containing specific questions about the pending litigation. Eight months after Westbrook had been associated as local counsel, Westbrook expressed her frustration at the lack of communication between her and the Zweiback firm in a letter she wrote to Edward Hotz of that firm, dated April 6, 1990:
 "I have expressed my concern regarding the handling of this case on a number of occasions. I do not feel that the interest of my client is being served when I am not provided information to evaluate the case and comply with discovery requests. This dilatory attitude can not continue."
Shortly thereafter, the Zweiback firm informed her that the case had been settled. While Westbrook acted as local counsel, she was never allowed to communicate with any employee of Central States, although on numerous occasions she requested to be allowed to do so.
With these facts in mind, we turn now to Ex parte Taylor CoalCo., supra. This Court stated in that case:
 " 'Disqualification of counsel, like other reaches for perfection, is tempered by a need to balance a variety of competing considerations and complex concepts. Disqualification in spasm reaction to every situation capable of appearing improper to the jaundiced cynic is as goal-defeating as failure to disqualify in blind disregard of flagrant conflicts of interest. Between these ethical extremes lie less obvious influences on the interest of society in the orderly administration of justice, on the interest of clients in candid consultation and choice of counsel, and on the interest of the legal profession in its representational soul.' "
401 So.2d at 7 (quoting State of Alabama v. Dean Foods ProductsCo., 605 F.2d 380, 383 (8th Cir. 1979)). More recently, in Exparte AmSouth Bank, N.A., 589 So.2d 715, 719 (Ala. 1991), we observed that this Court has adopted a "common sense" approach to questions concerning the professional conduct of lawyers. *Page 83 
After carefully considering the facts of this petition, we conclude that the two cases at issue are not substantially related to one another. Even if they were, we would note that it is apparent that the Gonce firm's involvement in the earlier case was minimal and that it did not acquire any information then that it could use against Central States now. Therefore, the trial court correctly denied Central States' motion to disqualify Gonce, Young Westbrook from participating in the pending litigation.
WRIT DENIED.
MADDOX, ALMON, ADAMS and INGRAM, JJ., concur.
[1] In his affidavit regarding his recommendation to Gonce, Jackson stated:
 "In my opinion, then and now, Ms. Westbrook's earlier unrelated representation of the insurance company was not substantially related to the proposed litigation against the same insurance company and posed no bar to a subsequent adverse representation, in a totally unrelated matter, as to Ms. Westbrook, Mr. Gonce, or any other member of the firm."