ADAMS, Justice.
Alfred W. Goldthwaite, a Montgomery attorney, appealed from an adverse decision of Panel II of the Disciplinary Board of the Alabama State Bar, in which he was found guilty on two counts of an eleven-count complaint alleging various violations of the Alabama Code of Professional Responsibility. He was suspended from practicing law for ninety days by the Disciplinary Board. The first count on which Goldthwaite was found guilty alleged that he solicited employment in contravention of DR 2-103(A)(1). The other count on which he was found guilty alleged that he represented parties to a cause after having represented a party with an adverse interest in the same cause, and that he did so through the actions of another attorney and thereby attempted to circumvent a disciplinary rule. This latter count is founded on alleged violations of DR 5-101(C) and DR 1-102(A)(2), respectively.
Although Goldthwaite raises numerous issues, two issues and the questions posed thereby are dispositive of this appeal. The first is: Did Goldthwaite’s act of suggesting his own employment to a layman violate DR 2-103(A)(l), or did it come within one of the exceptions provided in DR 2-105(A)(1), thereby bringing it outside the proscription of the former rule? The second issue is: When Goldthwaite changed sides and became a party contestant of the will after previously having been employed by the bank which was executor of the estate, did he violate the proscription against representing parties to a cause after previously representing an adverse interest and further, did he do so through the actions of another attorney and thereby attempt to circumvent a disciplinary rule? After careful consideration of the issues presented in the two counts on which Goldthwaite was convicted, we are unable to find that he violated any provisions of the applicable disciplinary rules. Accordingly, we reverse the decision of the disciplinary board. We will consider separately the two counts on which Goldthwaite was convicted.
*506 I. The Charge of Solicitation: DR 2-103(A)(1) and DR 2-105(A)(l)
Goldthwaite was charged and convicted of soliciting his employment as attorney for Alabama National Bank of Montgomery in the Estate of William Pelzer Arrington. The charge stems from a conversation between Goldthwaite and Louie H. Moore, Chief Executive Officer and Chairman of the Board of the Alabama National Bank. Shortly before Arrington’s death, Goldth-waite went to see Moore and informed him that Arrington was dying. Goldthwaite testified he advised Moore, “I don’t know if there is a will whether the bank will be named executor ... if you need an attorney I’m Billy’s first cousin and bear me in mind.” Testimony at the disciplinary hearing established that Goldthwaite and Ar-rington were also close friends and had been since just after the end of World War II. Additional testimony revealed the following facts. Arrington’s maternal grandfather, who died in 1931, was William K. Pelzer, one of the founders of the Alabama National Bank and a majority stockholder in it. He also was a “big” stockholder in the Durr Drug Company. Archie Arring-ton was the father of William Pelzer Ar-rington, and was Goldthwaite’s guardian. Goldthwaite was born and reared in the Goldthwaite-Arrington home in Montgomery. Archie Arrington totally supported Goldthwaite while he was growing up. Relatives of Goldthwaite and the Arringtons had a close and often interwoven relationship with the Alabama National Bank and the Durr Drug Company. Goldthwaite testified that he was the only male in his family who was not on the payroll of either one.
Louie H. Moore acknowledged at the disciplinary hearing that he and Goldthwaite were close friends and that he was a former attorney for the Alabama National Bank and a good customer of it.[1] Goldthwaite also testified to his close relationship with the Alabama National Bank. He explained that while he was Montgomery County Attorney he resisted an attempt to move the county’s account away from the Alabama National Bank. Goldthwaite further related that he had sent clients to the bank and had chosen it for the purpose of closing business transactions and Farmers Home Administration loans. Goldthwaite recalled that when he was nine years old, the president of the Alabama National Bank showed him how to fill out a deposit slip. At the time of Goldthwaite’s conversation with Moore, he was aware of the fact that the Montgomery law firm of Jones, Murray, Stewart and Yarbrough was employed by the Alabama National Bank on a regular retainer basis.
The starting point for our inquiry into whether Goldthwaite is guilty of solicitation begins with an examination of the relationship between DR 2-103(A)(l) and DR 2-105(A)(1). The rule against solicitation is contained in the provisions of DR 2-103. DR 2-103(A)(l) provides:
(A) A lawyer shall not:
(1) Solicit his employment or professional employment or engagement of another whose partner he is, or from whose employment there is an expectation of profit or benefit, directly or indirectly, to himself.
Exceptions to the proscription against solicitation are contained in DR 2-105. DR 2-105(A)(l) provides:
(A) A lawyer who has given unsolicited advice to a layman that he should obtain counsel or take legal action shall not accept employment resulting from that advice, except that:
(1) A lawyer may accept employment by a close friend, relative, former client (if the advice is germane to the former employment), or one whom the lawyer reasonably believes to be a client.
Goldthwaite contends that DR 2-105(A)(1) operates to modify DR 2-103(A)(1) so that, within the provisions of DR 2-105(A)(l), an attorney may suggest *507 his employment to a close friend, relative, or former client, without being guilty of solicitation. The Bar, however, argues that DR 2-105(A)(l) permits an attorney to give unsolicited advice to anyone, but that he may accept employment resulting from such unsolicited advice to a close friend, relative or former client only when such advice was given to prevent a miscarriage of justice or irreparable harm. We find the Bar’s argument untenable and we agree with Goldthwaite. The Bar correctly notes that the rule against solicitation should be enforced strictly. Dodd v. Board of Commissioners of the Alabama State Bar, 365 So.2d 975 (Ala.1979); See Ex parte Newton, 265 Ala. 650, 93 So.2d 164 (1957). However, we find that the very wording of DR 2-105(A)(1) creates exceptions to the general proscription against solicitation in the cases of “a close friend, relative, former client (if the advice is germane to the former employment), or one whom the lawyer reasonably believes to be a client.” The restrictive interpretation that the Bar urges we place on DR 2-105(A)(l) conflicts with the clear intent of that disciplinary rule, and is inharmonious with the fundamental nature of the relationships listed as exceptions to the proscription against solicitation. We perceive a valid distinction between those coming within any of the categories listed as exceptions in DR 2-105(A)(l) and other laymen. In the case of “a close friend, relative, [or] former client,” such an individual is less likely to be the subject of unethical practices or pressures. Presumably such an individual knows the competence and integrity of the advising attorney and can better evaluate the propriety of employing him than can laymen who are not within those categories. Additionally, the exceptions provided by the rule allow an attorney’s conduct to comport with the demands of the relationships involved in the cases of close friends and relatives, and with the propriety of fulfilling one’s professional role in the cases of former clients and those reasonably believed to be clients. Reason, therefore, compels us to conclude that the exceptions provided in DR 2-105(A)(l), are a modification of DR 2-103(A)(l), and that the operation of DR 2-105(A)(l) is not dependent upon exceptional circumstances necessitating that an attorney offer unsolicited advice, and accept employment therefrom, only in situations manifesting a miscarriage of justice or irreparable harm. This does not mean that an attorney may engage in conduct that is champertous or otherwise unethical. Nevertheless, it does mean that DR 2-105(A)(l) means what it clearly says in that an attorney may accept employment from unsolicited advice to anyone within one of the designated categories in that rule.
Our next inquiry is: Did Goldth-waite come within one of the exceptions to DR 2-103(A)(l) as provided in DR 2-105(A)(1)? We hold that he did. We have reviewed the evidence and arguments supporting both sides and conclude that the evidence overwhelmingly places Goldth-waite’s action within the scope of DR 2-105(A)(1). Goldthwaite’s action whereby he suggested his employment to Moore can be sanctioned in a number of ways. It is undisputed that Goldthwaite and Moore were close friends, as reflected in their testimony. Moore testified that he was not offended by Goldthwaite’s suggestion that the bank employ him as the attorney for Ar-rington’s estate, and that he did not feel his privacy had been invaded by Goldthwaite’s suggestion. That certainly is consistent with a close friendship between the two. We observe also that Goldthwaite could be described as a close friend of the Alabama National Bank. (Moore, in fact, testified that the bank considered Goldthwaite a friend.) His personal efforts on behalf of the bank, the fact that he previously represented it, and his family’s connection with it, dictate that we view Goldthwaite’s request to the bank (through Moore) for employment differently than if the request were made by a stranger to that entity. Goldthwaite’s request for employment, therefore, could be justified within the scope of DR 2-105(A)(l) by viewing that request as one made to the Alabama National Bank.
*508 Lastly, although not coming within the scope of DR 2-105(A)(l), Goldthwaite’s request for employment if viewed as motivated by a desire to help the estate of his dying cousin might also provide an independent defense to the charge of solicitation. At the time of Goldthwaite’s conversation with Moore, Goldthwaite already was representing Arrington on other matters. Goldth-waite and Arrington had been close friends for a long time. The record reflects the fact that Goldthwaite was concerned about Arrington’s impending death, and had several conversations with Moore regarding it. The record discloses that Goldthwaite and Moore had several conversations in which Goldthwaite indicated his desire to move Arrington to another hospital during his last illness. Arrington had named the Alabama National Bank as executor under his will. He designated Goldthwaite as his alternative choice for an attorney to assist the bank in carrying out its duties under his will. As it turned out, Arrington’s first choice for an attorney predeceased him. Goldthwaite’s designation as attorney for the estate was unknown to him until after Arrington’s death. Considered in their entirety, the above facts do not show prohibited solicitation in Goldthwaite’s actions.
II. The Charge of Representing Parties to a Cause After Representing an Adverse Interest and Attempting to Circumvent a Disciplinary Rule: DR 5-105(C) and DR 1-102(A)(2)
Several hours after Arrington’s funeral, Goldthwaite was hired to represent the bank which was executor of Arrington’s estate. Arrington’s will and codicil were admitted to probate on July 19, 1977. On September 16, 1977, the bank paid Goldth-waite a fee in the amount of $10,000.00. On January 9 or 10, 1978, Goldthwaite discussed with J. Paul Lowery, Esq., (Lowery) his willingness to become a party contestant if others decided to commence action. Some of Arrington’s heirs filed a petition on January 17, 1978, to contest his will. The following day Goldthwaite realigned his position from that of party proponent to party contestant. Goldthwaite testified that he realigned his position because he did not want to be on the opposite side of the action from all the members of his family. On January 19,1978, Goldthwaite wrote to Alabama National Bank advising that he had joined in the will contest and could not represent the estate at that time.' At the disciplinary hearing, Goldthwaite acknowledged that as one of Arrington’s heirs at law, he would have received more than he would have under the provisions Arrington made for him in his will. The value of Arrington’s estate exceeded several million dollars.
The will contestants hired Lowery to represent them. That contest eventually came before this court in Arrington v. Working Woman’s Home, 368 So.2d 851 (Ala.1979), in which this court affirmed the trial court’s grant of summary judgment against the contestants. Apparently Lowery also subsequently defended the contestants in an action by the bank for attorney’s fees, which action was unsuccessful. Goldth-waite took no part in assisting the will contest until June 1978, when he provided Lowery with an affidavit for the trial court’s consideration of the motion for summary judgment which was pending at the time. Goldthwaite acknowledged that when the will contest was appealed to this court, he wrote most of the appellate brief for Lowery. In addition, Goldthwaite further acknowledged that the appellate brief may have been typed in his office.
The Bar alleges that Goldthwaite violated DR 5-101(C) by representing the will contestants after having been the bank’s attorney in Arrington’s estate. DR 5-101(C) provides:
A lawyer shall not represent a party to a cause or his successor after having previously represented an adverse party or interest in connection therewith.
The Bar further alleged that Goldthwaite acted through Lowery and, thereby, attempted to circumvent a disciplinary rule through the actions of another in contravention of DR 1-102(A)(2):
(A) A lawyer shall not:

*509

(2) Circumvent a Disciplinary Rule through actions of another.
In Ex parte Taylor Coal Company, 401 So.2d 1 (Ala.1981), we adopted the “substantial relationship” test, which is used in deciding disputes as to the propriety of an attorney’s representing a party to a cause after having represented the other side. An attorney who has dealt with matters substantially related to his former client may not later represent the former client’s adversary in the same matter.
[T]he former client need show no more than that the matters embraced within the pending suit wherein his former attorney appears on behalf of his adversary are substantially related to the matters or cause of action wherein the attorney previously represented him, the former client. The court will assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation. It will not inquire into the nature and extent. Only in this manner can the lawyer’s duty of absolute fidelity be enforced and the spirit of the rule relating to privileged communications be maintained.
T. C. & Theatre Corporation v. Warner Brothers Pictures, Inc., 113 F.Supp. 265 at 268-69 (S.D.N.Y.1953), cited in Ex parte Taylor Coal Company, at 6. The test is used to determine if an attorney’s representation of his former client’s adversary is permissible. The rule also may be applied to aid in determining the propriety of an attorney’s action in the setting of an alleged violation of DR 5-101(C). With the rule we noted some exceptions to it.
Let us hasten to add that there are many exceptions to the rule. Some of the exceptions occur where there exist: (1) two or more clients employing the same attorney as in business transactions (drafting of deeds, execution of real estate agreements, etc.), (2) waiver, and/or (3) no public sense of impropriety involved in an attorney’s representing a client whose interests are hostile to those of his former client where the subject matter of the litigation is substantially the same. The attorney’s lips are not completely sealed in these exceptional situations, and the attorney may sue the former client concerning substantially the same subject matter.
Ex parte Taylor Coal Company, at 8. If an attorney’s actions are not improper under the “substantial relationship” test for purposes of disqualifying him from continuing in the cause in dispute, then there is no violation of DR 5-101(C). In that light we will consider the Bar’s charge against Goldthwaite.
Against the factual background described above, Goldthwaite’s actions are better placed in perspective by an analysis of what he did not do. Goldthwaite did not appear as an attorney of record in the will contest. There was no evidence that he had a contract of employment. No evidence was presented at the disciplinary hearing to show that Goldthwaite advised or counseled any of the contestants. Just the opposite, Goldthwaite’s uncontradicted testimony related that he had not advised them. Testimony from Louie H. Moore and David Thomas (trust officer), both of the Alabama National Bank, established that Goldth-waite, in the course of representing the bank, received no confidential information that would have helped the will contestants. Both Moore and Thomas testified that Goldthwaite’s realignment of himself with the will contestants had no effect upon the outcome of the will contest proceeding. There was no evidence to show that Goldth-waite attended any of the depositions in the will contest other than his own. Goldth-waite was charged $1,500.00 by Lowery for his legal services as were the other will contestants. Goldthwaite received no discount for assisting Lowery in preparing the appellate brief.
The Bar insists that by Goldthwaite’s action he violated DR 5-105(0) by representing the will contestants. At the outset, we are obliged to make a fundamental observation. There is no evidence to support a finding that Goldthwaite entered into an *510 attorney-client relationship with any of the will contestants. We appreciate and understand the Bar’s argument. In essence, it insists that Goldthwaite’s work on the appellate brief inured to the benefit of the will contestants, and that Goldthwaite thereby represented them. The Bar’s argument overlooks the fact that Goldthwaite was one of Arrington’s heirs at law and was also a legatee and beneficiary under his will and testamentary trust therein. It also overlooks Code 1975, § 43-1-80, which requires that all parties interested in a will must be made parties to a will contest. Goldthwaite certainly had a right to protect his own interest in the estate. His work on the appellate brief did just that. It is true that Goldthwaite’s work also benefited the other will contestants. However, under the facts and circumstances of this case, we are unable to conclude that Goldthwaite intended to, or did in fact, represent the other will contestants.
Even if we were to agree with the Bar’s contention that Goldthwaite represented the will contestants, that still would not change the outcome. Under the facts and circumstances of this case, we would conclude that Goldthwaite’s actions came under the third exception to the “substantial relationship” rule. We would discern “no public sense of impropriety” in his actions, thereby bringing him within that exception. Additionally, this case also might come within the second exception to the rule: that of a waiver by the former client.
Because we have found no attorney-client relationship between Goldthwaite and the other will contestants, Goldthwaite cannot be guilty of violating DR 5-105(C). Our finding necessarily dictates that consequently he cannot be guilty of attempting to circumvent a disciplinary rule through the actions of another, DR 1-102(A)(2).
III. Conclusion
Our holdings discussed above allow us to pretermit discussion of the other issues raised by this appeal. The judgment of the disciplinary board is hereby reversed and judgment is entered in accordance with this opinion.
REVERSED AND RENDERED.
TORBERT, C. J., MADDOX, FAULKNER, JONES, ALMON, SHORES, EMBRY and BEATTY, JJ., concur.

. Neither Moore nor the Alabama National Bank was responsible for instituting the disciplinary proceeding against Goldthwaite.