[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 845 
Regions Bank, as indenture trustee under a mortgage and trust indenture ("Regions"), petitions this Court for a writ of mandamus directing the Montgomery Circuit Court to vacate its order disqualifying Balch Bingham, LLP ("Balch"), as Regions' counsel in Regions' action against William Blount; BP Holdings, LLC ("BP"); and American Proteins, Inc. We grant the petition and issue the writ.
BP is an investment firm, which underwrites bond issues for governmental entities, including municipalities, and corporations. Approximately 40% of the ownership of BP is vested in Blount, who serves as its chairman and chief executive officer.
The dispute over Balch's representation involves two lawyers currently employed at Balch — William B. Sellers and JoClaudia Moore — and it is based on their previous affiliation with the law firm of Kaufman Rothfeder, P.C. ("Kaufman"). Sellers was an associate or partner at Kaufman from 1988 to 2001. He joined Balch as a partner in October 2001. Moore was an associate at Kaufman from August 1997 until she joined Balch in January 2002 as an associate.
It is undisputed that while Sellers and Moore were employed at Kaufman, Kaufman represented BP indirectly, or to a "very limited" extent. (Moore's affidavit.) It did, however, represent other entities in which either BP or Blount claimed some interest. More specifically, Kaufman represented Alabama Protein Recycling, L.L.C. ("Alabama Recycling"), which was formed in May 1998. Alabama Recycling, in which BP held a 40% interest, was formed for the purpose of manufacturing and producing protein-supplement products for use in agricultural feed.
Alabama Recycling was funded by the proceeds of Solid Waste Revenue Bonds, Series 1998A and 1998B ("the bonds"), issued in the amount of $6,800,000. The bonds were issued by the Industrial Development Board of the City of Troy ("the Board") pursuant to a "Mortgage and Trust Indenture Between the [Board] and Regions Bank as Trustee" ("the indenture"). The Alabama Recycling bond issue was underwritten by Blount Parrish Co., Inc. ("Parrish"). Blount is one of the largest shareholders in Parrish, its chief executive officer, and chairman of the board of directors.
While Sellers was affiliated with Kaufman, Kaufman acted as bond counsel in a number of bond issues underwritten by Parrish, three or more of which also involved bonds issued by the City of Troy or an agency of the City of Troy. Although Sellers personally handled a number of those bond issues, it is undisputed that neither he, nor anyone else at Kaufman, *Page 846 handled the Alabama Recycling bond issue.
It is also undisputed that Kaufman, through Moore and others, represented Alabama Recycling and the Board in an action filed against them in 1999 by Southern Agcom, Inc. ("Agcom"), a Georgia corporation. In that action, Agcom alleged that it had contracted with Alabama Recycling for the construction of chicken-processing facilities and that Alabama Recycling had breached the contract in refusing to pay for the work and materials supplied by Agcom. The complaint contained claims alleging (1) breach of contract, (2) work and labor done and goods sold, (3) open account, and (4) unjust enrichment.[1]
On April 10, 2001, Alabama Recycling was adjudicated by the United States Bankruptcy Court for the Middle District of Alabama an "involuntary debtor under Chapter 7 of the Bankruptcy Code." There is no evidence that Kaufman represented Alabama Recycling or any of the Blount-affiliated entities in the bankruptcy proceedings. Finally, although it is disputed, Blount asserts that Sellers performed for him, individually, "various estate planning functions."
On December 1, 2003, Regions sued Blount, BP, and American Proteins, Inc., which purchased some of the personal property originally purchased with proceeds from the sale of the bonds. The complaint contained the following pertinent factual allegations:
 "5. A portion of the proceeds from the sale of the bonds was used by Alabama Recycling to purchase four (4) McNealus trucks and one boom truck (`the trucks') which were used in connection with Alabama Recycling's poultry processing and recycling facility. Title to the trucks was issued to the [Board] or Alabama Recycling. . . .
 "6. Pursuant to a Lease Agreement [executed in conjunction with the issuance of the bonds] . . . Alabama Recycling leased from [the Board] the trucks and other items of real and personal property that were purchased by Alabama Recycling with the proceeds of the bonds. In turn, [the Board] assigned to Regions as Trustee, ` . . . personal property, including certain machinery and equipment acquired with the proceeds of the bonds'. . . . Based upon the foregoing, Regions as assignee of [the Board], was the owner of the trucks.
 "7. Prior to November 15, 2000, Blount and/or [BP], as either borrower or guarantor, caused loans to be made by no less than four (4) banks, including Regions Bank, Colonial Bank, First National Bank of Brundidge, and Troy Bank Trust.
 "8. On or about November 15, 2000, Blount caused the trucks to be ostensibly sold, assigned, or otherwise conveyed to American Proteins, Inc., for a purchase price of $524,000.00. American Proteins, Inc., purchased the trucks, which were titled in the name of [the Board] and [Alabama Recycling], without making any reasonable effort to determine whether William Blount, who executed the titles, had authority to do so.
 "9. The American Proteins, Inc., check representing the purchase price for the trucks was made payable to the order of [BP]. . . .
 "10. Blount was not authorized by Regions or [the Board] to convey the trucks to American Proteins. *Page 847 
 "11. Upon information and belief, the defendants caused the proceeds from the sale of the trucks to be used to pay off various bank loans for which Blount and/or [BP] were liable."
In short, Regions alleged that Blount and/or BP had effected an unauthorized sale of certain trucks, which had been assigned to Regions pursuant to the indenture, and had used the proceeds to satisfy obligations of Blount and/or BP. The complaint sought to recover, among other things, the alleged purchase price of the trucks based on claims of (1) conversion, (2) conspiracy, and (3) unjust enrichment.
Subsequently, Blount sought an order, "in accordance with Rule[s] [1.9 and] 1.10 of the Alabama Rules of Professional Conduct," to disqualify "the entire law firm of Balch Bingham" from representing Regions. The motion alleged that Sellers and Moore had, during their affiliation with Kaufman, "acquired vast amounts of personal, privileged, and confidential information protected by Rules 1.6 and 1.9(b) of the Alabama Rules of Professional Conduct concerning Mr. Blount and [his] various corporate entities." The allegations of conflict of interest were based on Blount's own affidavit, as well as affidavits of Thomas R. DeBray, a former associate of Kaufman, and Louis Ruston Rice, a business associate of Blount.
Regions filed a motion in response, supported by the affidavits of Sellers and Moore. Subsequently, however, the trial court granted Blount's motion. Regions then filed this petition, seeking a "writ of mandamus instructing the trial court to [vacate] its order . . . disqualifying [Balch]."
 I. Standard of Review
It is well settled that "[a] petition for a writ of mandamus is the appropriate vehicle by which to review an order disqualifying an attorney from representing a party." Ex parte Tiffin,879 So.2d 1160, 1164 (Ala. 2003). See also Ex parte IntergraphCorp., 670 So.2d 858, 860 (Ala. 1995); Ex parte Central StatesHealth Life Co. of Omaha, 594 So.2d 80 (Ala. 1992). "A writ of mandamus will issue where the petitioner has demonstrated `a clear legal right to the relief sought.'" Ex parte Dowdell,677 So.2d 1158, 1159 (quoting Ex parte Clark, 643 So.2d 977, 978
(Ala. 1994)). "Where there is no dispute as to any fact material to a dispositive element of . . . Rule 1.9 [or Rule 1.10], Ala. R. Prof. Conduct, the question is one of law and our review isde novo." Ex parte Tiffin, 879 So.2d at 1164.
 II. Alabama Rules of Professional Conduct
Rule 1.9 provides:
 "A lawyer who has formerly represented a client in a matter shall not thereafter:
 "(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client, unless the former client consents after consultation; or
 "(b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client or when the information has become generally known."
(Emphasis added.)
 "The party moving for an attorney's disqualification under . . . Rule 1.9 bears the burden of proving the existence of a conflict of interest. . . .
". . . .
 ". . . A former client seeking disqualification for the conflict addressed in Rule 1.9 must demonstrate (1) that it *Page 848 
`had an attorney-client relationship with the attorney the former client seeks to disqualify and [(2)] that the attorney represented the former client in a [(3)] substantially related matter.' Ex parte Intergraph Corp., 670 So.2d at 860."
Ex parte Tiffin, 879 So.2d at 1164-65 (emphasis added).
If the former client satisfies this burden, the attorney's disqualification/incapacity may be imputed to the entire firm, as stated in Rule 1.10(b):
 "When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(b) that is material to the matter."
(Emphasis added.) Thus, if either Sellers or Moore would be unable, consistent with Rule 1.9, to represent Regions, then Balch is also subject to disqualification.
There is no contention that Blount is currently a client of either Sellers or Moore. In that connection, Regions contends that Blount, individually, was never a client of Kaufman, and, consequently, that Blount lacks standing to seek the disqualification of its counsel. Blount, however, asserts by his own affidavit and the affidavit of DeBray that Sellers "was involved in Mr. Blount's estate planning work." Moreover, Regions conceded in its response to Blount's motion to disqualify Balch that "Sellers and Moore were personally involved in the representation of either Blount individually or the affiliated companies." Although there is a conflict in the evidence regarding Sellers's and Moore's representation of Blount, for the purpose of this discussion we will resolve that conflict in favor of Blount.
It is undisputed that Regions' action against Blount and BP is not the "same" as any former "matter" in which the Kaufman firm represented Blount, BP, or any other Blount-affiliated entity. The issue, therefore, is whether any matter involved in Sellers's or Moore's former representation of Blount or BP is "substantially related" to this litigation.
"The substantial relationship test is the keystone of the law on conflicts of interests involving former clients." 1 Lawyers'Manual on Professional Conduct (ABA/BNA) 51:221 (2004) (hereinafter "Lawyers' Manual"). "[T]he test entails inquiry into the similarity between the factual situations, the legal issues posed, and the nature and extent of the attorney's involvement to see if information from the prior representation is material to the new representation." Lawyers' Manual 51:225. See also Ex parte State Farm Mut. Auto. Ins. Co.,469 So.2d 574, 575-76 (Ala. 1985). The Comment to Rule 1.9 states:
 "The scope of a `matter' for purposes of paragraph (a) may depend on the facts of a particular situation or transaction. The lawyer's involvement in a matter can also be a question of degree. When a lawyer has been directly involved in a specific transaction, subsequent representation of other clients with materially adverse interests clearly is prohibited. On the other hand, a lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a wholly distinct problem of that type even though the subsequent representation involves a position adverse to the prior client. . . . The underlying question is whether the lawyer was so involved in the matter that the subsequent *Page 849 
representation can be justly regarded as a changing of sides in the matter in question."
(Emphasis added.)
Mere "blanket statements" will not suffice to satisfy the former client's burden. Ex parte Rush, 574 So.2d 808, 810
(Ala.Civ.App. 1990). "`Only when the moving party delineates with specificity the subject matters, issues, and causes of action presented in former representation can the . . . court determine if the substantial relationship test has been met. Merely pointing to a superficial resemblance between the present and prior representations will not [suffice].'" Ex parte State FarmMut. Auto. Ins. Co., 469 So.2d at 575-76 (emphasis added) (quoting Duncan v. Merrill Lynch, Pierce, Fenner Smith, Inc.,646 F.2d 1020, 1029 (5th Cir. 1981)).
Blount's objections to Balch's representation are based on Sellers's and/or Moore's involvement in essentially two categories of legal matters: (1) the various bond issues, and (2) the Agcom litigation. We shall discuss each of these categories in turn.
 A. The Bond Issues
The essence of Blount's argument under this category is as follows:
 "[V]irtually all of the representation [by] Sellers had to do with bond issues involving the [Board] and related agencies, the structure and mechanism of how those bond issues applied, the security interests and liens applicable through those bond issues and related matters.
 "The very issue under consideration before the trial court involves a bond issue from the [Board], and whether those assets which were the subject of the sale by Mr. Blount to American Protein (the other defendant) were encumbered by security interests and/or constituted assets which were the subject of the bond issue. In other words, did [Regions] have a perfected security interest in those assets and were they actually assets which were the subject of the bonds' indebtedness. The bond lien mechanisms, strategies and related documentation [were] the very subject of the prior representation by Mr. Sellers for Mr. Blount and his companies."
Blount's brief, at 18-19.
Regions contends that these allegations "fail to identify how the bond issues, which were not the bond issue underlying [this case], are substantially related to this case, or how the `structure and mechanism' of . . . those bond issues, and the `security interests and liens applicable through those bond issues,' are related even slightly" to this case. Reply brief, at 3. We agree.
It is true that "virtually all of the representation [by] Sellers had to do with bond issues involving the [Board]," and that the "very issue under consideration [in this case] involves a bond issue from the [Board]." It does not follow, however, that "[t]he bond lien mechanisms, strategies and related documentation [for this bond issue were] the very subject of the prior representation." On the contrary, the Alabama Recycling bond issue is entirely separate and distinct from all of the bond issues handled by Sellers for a Blount-affiliated entity. Indeed, Rice stated in his affidavit that one of the other bond issues issued by the Board and/or the City of Troy constituted a "unique form of financing." (Emphasis added.)
The only similarity between these prior bond issues and the Alabama Recycling bond issue is that they are of a common type.
However, "a lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a wholly *Page 850 
distinct problem of that [same] type." Comment to Rule 1.9 (emphasis added). In other words, the fact that Sellers handledother bond issues underwritten by a Blount-affiliated entity and issued by the Board, without more, does not prohibit Balch, with whom Sellers is now associated, from taking a position adverse to Blount in a matter relating to the Alabama Recycling bond issue. Blount offers nothing — other than mere "blanket statements" — suggesting more than a "superficial resemblance between" the Alabama Recycling bond issue and the ones previously handled by Sellers.
Similarly, Blount contends that Moore was involved in the drafting of documents necessary to create "various Blount entities," and, therefore, that she "has intimate knowledge of Blount's management agreements, and of the intentions of Blount when such entities were created." Blount's brief, at 21. The only support for this argument is found in Rice's affidavit, in which he states that Moore "literally drafted [the documents necessary for] or created" Sunbelt Environmental, Inc., and its subsidiaries. Although Sunbelt is also an entity chiefly owned by Blount, neither Sunbelt nor any of its subsidiaries is involved in this action. Thus, Moore's knowledge of the "management agreements" involving Sunbelt does not translate into confidential information regarding the workings of BP, the only Blount entity involved in this action.
Moreover, generalized background knowledge, such as Moore's knowledge of "the intentions of Blount when such entities were created," so-called "`playbook' information," Lawyers' Manual, at 51:227, is not "independently relevant," unless "such information will be directly in issue or of unusual value in the subsequent matter." Restatement (Third) of the Law GoverningLawyers § 132, comment d(iii) (2000). We fail to see how some general knowledge of Blount's "intentions" regarding the formation and operation of entities not involved in this action is "directly in issue or of unusual value." Thus, the involvement of Moore in the formation of Sunbelt or other Blount-affiliated entities not involved in this case, without more, is insufficient to disqualify Balch from representing Regions.
 B. The Agcom Litigation
Blount also argues that Moore's involvement in the Agcom litigation is "substantially related to the current case." Blount's brief, at 19. More specifically, he states:
 "An important issue under consideration is whether the assets of Alabama [Recycling], which were the subject of the sale by Blount, constituted assets which were the subject of the bond issue. In other words, did Alabama [Recycling] own those assets and were they actually assets which were the subject of the bond indebtedness and/or liens. Moore's prior representation of Alabama [Recycling] necessarily included issues relating to the [indenture]. These issues are central to the current case brought by Regions Bank."
Blount's brief, at 20.
Regions contends that "Blount never showed how the work Moore did defending Alabama [Recycling] in Southern Agcom is substantially related to Regions v. Blount." Petition, at 24. Regions presented Moore's affidavit, which stated, in pertinent part:
 "4. The [Kaufman] billing records . . . reflect that I assisted Tom DeBray, at that time a partner with [Kaufman], in the representation of Alabama [Recycling] and the [Board] as defendants in an action filed in the United States District Court, Middle District of Alabama, *Page 851 
styled Southern Agcom, Inc. v. Alabama Protein Recycling, L.L.C. and the Industrial Development Board of the City of Troy, Alabama, Case No. 99-CV-907. [That] action arose out of a dispute between Southern Agcom, Inc., and Alabama [Recycling] and [the Board] regarding the construction of a facility for Alabama [Recycling] that would process chickens.
 "5. According to the [Kaufman] billing records, my representation of Alabama [Recycling] and [the Board] consisted of 12.3 billable hours in which I attended one scheduling conference, drafted a motion for leave to amend an answer, an amended answer, a witness list and deposition notices, and performed general research. It appears from the billing records that I worked on this matter in October 1999 (1.2 hours) and May 2000 (11.1) hours.
 "6. I did not recall representing Alabama [Recycling] or [the Board] while at [Kaufman] until said representation was recently brought to my attention by Tom DeBray. . . . Based upon my review of the billing records, it does appear that I was peripherally involved in Tom DeBray's and [Kaufman's] representation of Alabama [Recycling] and [the Board]. Notably, based upon my review of the federal court's Southern Agcom file, I did not even enter an appearance in the Southern Agcom case.
 "7. Based upon my review of the complaint in the Regions suit and the Southern Agcom complaint, the issues raised in the Southern Agcom action, a construction dispute, are not in any way related to the issues in the Regions suit, the sale of trucks."
(Emphasis added.)
We agree with Regions that the work Moore performed for Alabama Recycling in the Agcom litigation is not substantially related to this case. Blount insists that "Moore's prior representation of Alabama [Recycling] necessarily included issues relating to the [indenture]," and that those "issues are central to the current case brought by Regions." However, he does not identify thoseissues or explain how the same issues would be central both to a breach-of-contract action by a Georgia corporation against Alabama Recycling alleging failure to pay for the construction of a poultry-processing facility and to a conversion action against Blount alleging the unauthorized sale of trucks assigned to Regions. Although the indenture may become an issue in this case, there is no evidence that any of its provisions was in issue in the Agcom litigation. Thus, it has not been shown how Moore would have acquired confidential information regarding the indenture during her prior representation of Alabama Recycling.
In short, there is no evidence indicating that Sellers or Moore has represented Blount or BP in any matter that is "substantially related" to this case. Blount speaks only in generalities, which are insufficient to satisfy his burden of proof as to the existence of a conflict of interest. Ex parte State Farm Mut.Auto. Ins. Co., supra. Otherwise stated, Regions has demonstrated a clear, legal right to a writ of mandamus directing the trial court to vacate its order disqualifying Balch.
PETITION GRANTED; WRIT ISSUED.
NABERS, C.J., and SEE, LYONS, HARWOOD, BOLIN, and PARKER, JJ., concur.
STUART and SMITH, JJ., recuse themselves.
[1] The disposition of Agcom's action against Alabama Recycling is not material to this case. *Page 852